UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| KATHLEEN A. MILLER, | Civil Action No.: 16-13695 |
| | Honorable Robert H. Cleland |
| Plaintiff, | Magistrate Judge Elizabeth A. Stafford |
| v. | |
| NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

_____/

### REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF. NOS. 12, 15]

Plaintiff Kathleen Miller appeals a final decision of defendant Commissioner of Social Security (Commissioner) denying her application for disability insurance benefits (DIB) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that the administrative law judge's (ALJ) decision is supported by substantial evidence, and thus **RECOMMENDS** that:

- Miller's motion [ECF No. 12] be **DENIED**;
- the Commissioner's motion [ECF No. 15] be **GRANTED**; and

- the Commissioner's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

## I. BACKGROUND

### A. Miller's Background and Disability Applications

Miller was born on August 28, 1968, making her 44 years old on her alleged onset date of April 1, 2013. [ECF No. 10-5, Tr. 131]. She applied for disability benefits in January 2014 and is insured for DIB purposes through March 31, 2018. [*Id.*; ECF No. 10-2, Tr. 23]. Miller attained a GED in 1991 and has prior work history as a barista, cashier, and fast-food worker. [ECF No. 10-6, Tr. 149-50]. She alleged disability due to degenerative disc disease (DDD), arthritis, seizures, spinal and left knee pain, difficult ambulation, tinnitus, fatigue, sleep difficulties, and anxiety attacks. [ECF No. 10-6, Tr. 148].

After the Commissioner denied her disability application initially, Miller requested a hearing, which took place in September 2015, during which she and a vocational expert (VE) testified. [ECF No. 10-2, Tr. 33-54]. In a November 4, 2015, written decision, the ALJ found Miller to be not disabled. [*Id.*, Tr. 28]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Miller timely filed for judicial review. [*Id.*, Tr. 1-3; ECF No. 1].

## B. The ALJ's Application of the Disability Framework Analysis

DIB is available for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 404.1520(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity, and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 1520(c).

final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Miller was not disabled. At the first step, he found that Miller had not engaged in substantial gainful activity since her alleged onset date. [ECF No. 10-2, Tr. 23]. At the second step, the ALJ found that Miller had the severe impairments of degenerative disc disease, arthritis, seizure disorder, and high blood pressure. [*Id.*]. Next, the ALJ concluded that none of the impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, Tr. 23-24].

Between the third and fourth steps, the ALJ found that Miller had the RFC to perform a light work as defined by 20 C.F.R. § 404.1567(b), with the additional restrictions of avoiding "ladders, scaffolds, or ropes" and "even moderate exposure to hazards"; only occasional overhead reaching with the right, non-dominant upper extremity; and "a sit/stand option up to 3 times per hour." [*Id.*, Tr. 24]. At the fourth step, the ALJ concluded that

4

Miller could not perform her past relevant work. [*Id.,* Tr. 26-27]. At the final step, after considering Miller's age, education, work experience, RFC, and the testimony of the VE, the ALJ determined that Miller could perform work in occupations such as information clerk and general office clerk, which exist in significant numbers in the national economy. [*Id.*, Tr. 27-28].

## II.    ANALYSIS

### A.

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Miller argues that the ALJ violated the treating physician rule, failed to properly weigh the opinions of her doctors, and crafted an inaccurate RFC.

5

The Court disagrees, finding that any error committed by the ALJ is harmless, and recommends that the decision be affirmed.

**B.**

Miller contends that the opinions of Mark F. Rottenberg, M.D., and Michele Ritter, M.D., were entitled to controlling weight and that the ALJ failed to give good reasons for giving them little weight. The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 727-29; *Rogers*, 486 F.3d at 242-43. An ALJ who decides to give less than controlling weight to a treating physician's opinion must give "good reasons" for doing so, in order to "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)).

The ALJ first discussed Dr. Rottenberg's opinion, noting that Miller initially visited him with complaints of low back pain in August 2013. [ECF No. 10-2, Tr. 25; ECF No. 10-7, Tr. 223]. Dr. Rottenberg's notes from that

6

visit indicated that Miller had occasional numbness of the hands, had difficulty sleeping, suffered from arthritis, and had spinal tenderness. [ECF No. 10-7, Tr. 223]. Miller admitted to babysitting her eight-month old grandson who was just beginning to walk, and that her last day worked was in June 2013. [*Id.*]. The ALJ noted that Dr. Rottenberg's records were handwritten and difficult to read, but he was able to discern notes that referred to x-rays[2] showing DDD and osteoarthritis in the spine, and showing that Miller received injections and pain medication from September 2013 to February 2014 on a monthly basis except for January. [ECF No. 10-2, Tr. 25; ECF No. 10-7, Tr. 219-22]. Dr. Rottenberg also saw Miller in March and April, noting lower back pain at an eight out of ten, and a positives straight-leg raise test on the left at the later visit. [ECF No. 10-7, Tr. 283-84]. The ALJ mistakenly wrote that Dr. Rottenberg did not treat Miller from early 2014 until July 2014. [ECF No. 10-7, Tr. 25].

    Dr. Rottenberg's handwritten notes are susceptible to different interpretations. For example, with respect to the December 2013 record, Miller writes, "Dr. Rottenberg found Plaintiff exhibited a positive right straight leg raise, mild right foot drag, 'severe' spasms in the lower back, and 'severe' left knee pain with crepitus of the knees (left worse than

---

[2] The actual x-ray records are not within the record.

right)." [ECF No. 12, PageID 363, citing ECF No. 10-7, Tr. 220]. But this Court reads Dr. Rottenberg as indicating that Miller had decreased spasms and pain, and was sleeping better, at the December 2013 visit. [ECF No. 10-7, Tr. 220]. But then, when addressing the form that he would be completing, Dr. Rottenberg described Miller as having severe spasms in the low back and severe pain. [*Id*.]. So while Miller describes in substantial detail how she interprets Dr. Rottenberg's notes in her brief, the ALJ found the notes difficult to read, [ECF No. 10-2, Tr. 25], and so does this Court. And, as described below, Dr. Ritter's medical records do not confirm severe spasms or positive straight leg raise tests.

In April 2014, Dr. Rottenberg completed a medical source statement. [*Id.*, Tr. 241-44]. He listed Miller's diagnoses as lumbosacral disc disease, left sciatica, left L5 lumbosacral radiculopathy, left knee multicompartmental arthritis, and seizure disorder, as demonstrated by abnormal x-rays, imaging studies, somatosensory evoked potential (SEP) testing, and prior MRI and EEG studies. [*Id.*, Tr. 241]. Dr. Rottenberg described Miller as having left knee and sciatica pain, low back pain, a positive straight leg raising test on the left at eighty degrees, muscle spasm, abnormal gait, sensory loss, tenderness, and crepitus. [*Id.*, Tr. 242]. He believed that Miller would be off task for 25% of the day or more;

8

could walk up to three blocks without rest or severe pain; could sit and stand for 45 minutes at a time; and, in a total work day, could stand or walk for less than two hours and sit for about four hours of the day. [*Id.*, Tr. 242-43]. Dr. Rottenberg further opined that Miller would need to shift positions at will from sitting to standing or walking, would need an unscheduled fifteen minute break every one to two hours, and was limited in her ability to lift ten or more pounds, twist, stoop, crouch, squat, climb ladders, and climb stairs. [*Id.*]. He also estimated that Miller would likely miss more than four days of work per month due to her impairments or treatment. [*Id.*, Tr. 244]. The ALJ found that Dr. Rottenberg's opinion was too restrictive, given the treatment notes reflecting conservative treatment with significant gaps, and the opinion's inconsistency with Miller's admissions to babysitting a small child and lifting a 45-pound cat. [ECF No. 10-2, Tr. 26].

Before addressing Miller's arguments that the ALJ's reasoning was flawed, the Court will address a discrepancy in the records that Miller did not raise in her brief. The ALJ twice referenced Miller's admission that she could lift "a 45-pound cat." [ECF No. 10-2, Tr. 26]. In the hearing transcript, however, Miller is reported as saying that the cat is "probably about five pounds." [*Id.*, Tr. 49]. The Commissioner argues that the transcript indicating that Miller testified to the cat being five pounds was

9

"error on its face" as evidenced by the facts that the ALJ recalled her stating that the cat was 45 pounds and that Miller called her cat "a fatty." [*Id.*; ECF No. 15, PageID 402, n. 4].  But according to the Guinness World Record, the heaviest cat on record was just under 47 pounds,[3] and Miller's estimate regarding the weight of her cat may not have been accurate anyway.  The Court thus assumes that Miller's cat was hefty, but not necessarily 45 pounds.

      Challenging the ALJ's assessment of Dr. Rottenberg's opinion, Miller argues that the ALJ only analyzed the August 2013 visit, thus providing an incomplete account of her medical history.  [ECF No. 12, PageID 375].  But this is clearly untrue, as the ALJ considered and summarized Dr. Rottenberg's records from August 2013 until "early 2014."  [ECF No. 10-2, Tr. 25].  Miller refers to Dr. Rottenberg's "full[] involve[ment] in the longitudinal picture of Plaintiff's care and the nature and degree of his involvement," but Dr. Rottenberg's treatment records consist of only several pages of handwritten and often illegible notes documenting visits over a period of less than a year.  [ECF No. 12, PageID 374; ECF No. 10-7, Tr. 219-24, 283-84].  Miller cites to a Tibial SEP study that found "left

---

[3] http://www.guinnessworldrecords.com/news/2015/8/60-years-on-the-categories-that-guinness-world-records-no-longer-monitors-393758 (last accessed November 16, 2017).

10

peripheral slowing due to lumbosacral radiculopathy" in January 2014. [ECF No. 10-7, Tr. 225]. But a mere diagnosis says nothing about its disabling effects. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). In fact, state agency consultant B.D. Choi, M.D., recognized Miller's diagnosis of lumbar radiculopathy, but concluded that Miller could perform light work in June 2014. [ECF No. 10-3, Tr. 61-63]. Miller does not challenge the ALJ's assignment of great weight to Dr. Choi's opinion. [ECF No. 10-2, Tr. 26].

Dr. Ritter opined that Miller had chronic back pain and lumbar radiculopathy with a poor prognosis and pain rated at and eight out of ten. [ECF No. 10-7, Tr. 278]. She further opined that Miller would be off task 25% of the day or more, was incapable of even low stress jobs, could walk less than one city block without rest or severe pain, could only sit or stand for fifteen minutes at a time, could only sit or stand/walk for less than two hours in an eight-hour work day, and would need to shift at will from sitting, standing, or walking and take unscheduled breaks throughout the day. [*Id.*, Tr. 279-80]. Dr. Ritter found that Miller was able to occasionally lift under ten pounds, but nothing more. [*Id.*, Tr. 280]. Miller contends that this opinion is consistent with Dr. Ritter's treatment notes, which reflect a progressive worsening of Miller's symptoms.

11

The ALJ found Dr. Ritter's opinion to be too restrictive given her treatment history, and contradicted by Miller's admissions of vacationing,[4] and her being able to lift a heavy cat and babysit a small child. [ECF No. 10-2, Tr. 26]. He further noted that, on Miller's initial visit in July 2014, Dr. Ritter's treatment notes indicate decreased range of motion and pain over palpation, but her examination was otherwise unremarkable. [*Id.*, Tr. 25, citing ECF No. 10-7, Tr. 271]. Dr. Ritter prescribed Norco in October of that year, but Miller's objective exam during that visit was entirely unremarkable, and in December and January she had only decreased range of motion of the spine. [ECF No. 10-7, Tr. 266-68]. In March 2015, Miller had a decreased range of motion in the left shoulder, attributed to osteoarthritis, but her prescriptions were unchanged, and her examination results were largely the same from then until her last visit in July 2015. [*Id.*, Tr. 259-63].

Miller retorts that her subjective complaints support the opinions of Dr. Rottenberg and Dr. Ritter, and claims that there is "no reason to

---

[4] The ALJ noted that Miller sought medical help in June 2013, complaining of tick bites following a vacation. [ECF No. 10-2, Tr. 25, citing ECF No. 10-7, Tr. 215-16]. This record describes Miller as complaining of pain in hands and joints, possible associated with Lyme disease, but the portions of the form related to musculoskeletal disease were left blank. [*Id.*]. The ALJ found the lack of noted complaints of back pain to be relevant, as this medical visit was after Miller's alleged onset date. [ECF No. 10-2, Tr. 25].

discount [her] credibility." [ECF No. 12, PageID 375]. But credibility determinations of witnesses are within the province of the ALJ and should not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ found Miller to be not fully credible, reasoning that Miller was capable of going on vacation, lifting a heavy cat, and babysitting a small child after her alleged onset; that the medical findings in the record were weak; and that the medical opinions were not credible. [ECF No. 10-2, Tr. 26]. The ALJ further noted that Miller testified to suffering headaches and debilitating fatigue, but that there was no evidentiary support for these complaints in the record, suggesting that she embellished some of her symptoms. [*Id.*]. Miller has provided no reason to disturb the ALJ's credibility determination, meaning that her subjective complaints do not bolster the treating sources' opinions.

"If the Secretary's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations and internal quotation marks omitted). Here, Miller cites to evidence that might support the opinions of the treating physicians, but substantial evidence in the record supports the ALJ's finding that Dr.

13

Rottenberg's and Dr. Ritter's opinions were not well-supported with sufficient medically acceptable clinical and diagnostic evidence, and were inconsistent with their treatment records. The ALJ thus cited good reasons for not granting those opinions controlling weight. *Gentry*, 741 F.3d at 727-29; *Rogers*, 486 F.3d at 242-43.[5]

## C.

Miller attacks the accuracy of the RFC, but this argument is largely based on the ALJ's failure to follow the opinions of Dr. Rottenberg and Dr. Ritter. [ECF No. 12, PageID 379-81]. For the reasons previously stated, the ALJ did not err in declining to give controlling weight to those opinions.

Of further note, Miller does not challenge the ALJ's analysis or weighing of Dr. Choi's opinion that Miller could occasionally lift twenty pounds and frequently lift up to ten pounds, which is consistent with an RFC for light work. [ECF No. 10-3, Tr. 62]. 20 C.F.R. § 404.1567(b). The ALJ agreed with Dr. Choi on that assessment, as well as the limitation to avoid all exposure to hazards such as machinery and heights. [*Id.*, Tr. 62;

---

[5] Miller rehashes her complaint about the treatment that the ALJ gave to Dr. Rottenberg's and Dr. Ritter's opinion in her second argument. [ECF No. 12, PageID 377-78]. The analysis set forth above applies equally to this second argument.

14

ECF No. 10-2, Tr. 24]. The ALJ added that Miller must have a sit/stand option for up to three times per hour. [ECF No. 10-2, Tr. 24, 26].

Miller does take issue with the ALJ's analysis of the May 2014 opinion from Michael Geoghegan, D.O.; she calls that analysis unclear. [ECF No. 10-7, Tr. 246-49]. The Court agrees that the ALJ did not explain why he gave Dr. Geoghegan's opinion "some weight," and did not specify the portions of that opinion with which he disagreed. [ECF No. 10-2, Tr. 25]. But Miller does not show that she was prejudiced as a result.

Dr. Geoghegan found that Miller had a mild left sided limp but did not require use of an assistive device; that she had limited range of motion of the lumbar spine but otherwise had intact and full range of motion; and that her straight leg raises were negative bilaterally. [ECF No. 10-7, Tr. 248-49]. He described Miller as having moderate difficulties on some tasks, including heel and toe walking, squatting and hopping, which he attributed to her lumbar spine and left knee pain. [*Id.*, Tr. 249]. Afterwards, Dr. Choi considered Dr. Geoghegan's opinion along with the other evidence in the record, and concluded that Miller was capable of light work. [ECF No. 10-3, Tr. 59-61]. Miller bears the burden of proving that she requires a more restrictive RFC. *Preslar*, 14 F.3d at 1110. She does not show that she would require a more restrictive RFC even if Dr. Geoghegan's opinion were

given greater weight, so any error committed by the ALJ in failing to more clearly explain his treatment of that opinion is harmless.

## III.    CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Miller's motion for summary judgment be [ECF No. 12] be **DENIED**; that the Commissioner's motion [ECF No. 15] be **GRANTED**; and that the Commissioner's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

Dated: November 13, 2017

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

## **NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of*

*HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 13, 2017.

s/Karri Sandusky for
MARLENA WILLIAMS
Case Manager
